UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| CARLOS L. WILLIAMS | * | NO: | 20-196 |
| | * | | |
| VERSUS | * | SECTION: R | |
| | * | SARAH S. VANCE | |
| MAGNOLIA MARINE TRANSPORT | * | | |
| COMPANY AND BIG RIVER | * | MAGISTRATE:2 | |
| SHIPBUILDERS | * | DONNA PHILLIPS CURRAULT | |

**************************************************************************

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Plaintiff, Carlos Williams, respectfully submits that Defendant, Magnolia Marine Transport Company ("MMT"), cannot meet all three factors of its purported *McCorpen* defense against the maintenance and cure claims asserted in this case. Unless it can meet all factors, MMT is not entitled to partial summary judgment on maintenance and cure. As it has not met its burden showing that Mr. Williams's prior shoulder injury, which occurred over ten years before his 2019 workplace injury, was material to its decision to hire him or that there was concealment as required under the law, MMT cannot have Plaintiff's claims for maintenance and cure dismissed. Accordingly, Plaintiff respectfully requests that MMT's Motion for Partial Summary Judgment (R. Doc. 21) be denied.

## FACTUAL BACKGROUND

Carlos Williams was initially hired by MMT in 2012 to work as a deckhand. He quickly worked his way up to the role of tankerman, a job which he held for several years and up to the time of his workplace injury on May 22, 2019. On that date, the MMT vessel to which he had been assigned for several months, the M/V JODY MCMINN, was slated to go into dry dock at Big River Shipyard in Vicksburg, Mississippi for repairs. The MMT deck workers, including Mr.

1

Williams, have no role in positioning the vessel within the dry dock, rather the vessel must rely on the Big River Shipyard workers to make sure the vessel is in proper position.[1] After it was placed in the dry dock, the vessel shifted from the timbers on which it had been placed, and listed to the port side. When the vessel shifted, Mr. Williams lost his balance, causing him to fall.[2] He injured his left shoulder in this fall, and left the vessel that day to seek medical treatment for his shoulder pain.[3] The captain of the M/V JODY MCMINN testified that there was nothing wrong with where Mr. Williams was located or standing at the time he fell on the vessel.[4] Mr. Williams now requires surgery for his left shoulder, which MMT has refused to authorize under its maintenance and cure obligation, instead seeking dismissal of those claims.[5]

In 2009, Mr. Williams required a left shoulder surgery to repair a torn labrum due to a football injury which occurred during the football season a few months earlier. Shortly after that procedure, Mr. Williams's physician noted that Mr. Williams had "excellent strength" and full range of motion, allowing him a release from care at the following visit.[6] Until the fall ten years later on the M/V JODY MCMINN in May 2019, Mr. Williams saw no medical providers from the time he was released from a doctor's care in early 2009 and had no complaints of pain or problems with his shoulder.

When Mr. Williams was initially hired by MMT in 2012, he was asked to undergo a pre-employment physical, which included a physical evaluation and a functional capacity evaluation ("FCE"). This FCE tested the physical requirements which Mr. Williams would be expected to perform in his job with MMT, and Mr. Williams passed this test with no difficulties.[7] This FCE

---

[1] Deposition of Henry Pouliot, attached as Exhibit 1, at p. 18.
[2] Deposition of Carlos Williams, attached as Exhibit 2, at pp. 109-111.
[3] Williams Dep. at p. 110, 115-17.
[4] Pouliot Dep. at p. 29.
[5] *See* August 14, 2019 note from Dr. Thomas, Lyons, attached as Exhibit 3.
[6] *See* February 24, 2009 note from Dr. James Ramsey, attached as Exhibit 4.
[7] 2012 Good Samaritan FCE, attached as Exhibit 5.

tested, among other things, the ability of Mr. Williams to lift 75 pounds and carry it several hundred feet, and for him to be able to pull a force in excess of 150 pounds, much like he would be required to do in line handling on the job.[8] He was able to perform all tasks asked of him, and was qualified to work as a deckhand with MMT "safely."[9]

In connection with this evaluation, Mr. Williams also completed a medical history questionnaire, noting no physical problems that would prevent him from performing his job. While the questionnaire may have asked about all of Mr. Williams's medical history, he did not understand the questions to ask for such a thorough history. When he read the questionnaire, he "didn't comprehend…didn't understand the part of 'in the past' because [he ] wasn't thinking about [his] shoulder. Like [he hadn't] had no issue with [his] shoulder at the moment, so no…[he] checked no because [he] wasn't having any issues with his shoulder."[10]

What is significant about this testimony regarding his comprehension of the forms he was requested to fill out is that Mr. Williams was diagnosed with a learning disability when he was in the sixth grade—specifically, a reading comprehension disability.[11] Throughout the remainder of grade school and high school, Mr. Williams attended regular classes, with a supplement of "resource" or a period where he would get assistance with his schoolwork. As part of "resource," schoolwork and documents were read to Mr. Williams.[12] This is clearly and unambiguously documented in the education records obtained by MMT from Vicksburg High School, where Mr. Williams attended several years of schooling. In those records, "resource" or "tutor" is listed as a course or period every year he attended that school, beginning in the seventh grade.[13] While Mr.

---

[8] Ex. 5.
[9] Ex. 5.
[10] Williams Dep. at pp. 168-69.
[11] Williams Dep. at p. 166.
[12] *Id.* at pp. 166-67.
[13] Vicksburg High School Transcript, attached as Exhibit 6.

Williams also enrolled at Hines County Community College after high school, he was largely unsuccessful in those courses, despite having similar assistance.[14] His only "A" grades were for courses in football and "college life." Mr. Williams did not obtain any degrees or certificates, having withdrawn from or failed many of his courses, and finally leaving school with a 1.6 GPA.[15]

This lack of understanding of what the questionnaire is asking is further seen in the pre-employment physicals forms completed when Mr. Williams returned to work for MMT in 2017. After he was hired in 2012 and quickly moved up to the role of tankerman, Mr. Williams fell down some stairs while working for MMT and injured his knee, ultimately requiring knee surgery. He left for a short period in 2017, and then returned to MMT, again filling out pre-employment physical questionnaires. In those questionnaires, Mr. Williams was asked about any conditions which he suffered, including joint deformities, knee issues, or shoulder problems.[16] He was also asked whether he had ever had a worker's compensation or similar injury, which by that time he had suffered with MMT back in 2014. He answered no to those questions.[17] MMT knew of Mr. Williams's knee surgery, having paid for it and provided him with time off for recovery, yet Mr. Williams did not understand that the company was asking for that information.

Further, in addition to passing the FCE administered to him in 2012, Mr. Williams was always physically able to perform his job as a deckhand and later a tankerman with MMT, as it related to his shoulder. Before his fall on the M/V JODY MCMINN on May 22, 2019, his coworkers never heard Mr. Williams complain about shoulder pain or noticed him to have any difficulty performing his job.[18] There are genuine disputes of fact as to whether the shoulder injury

---

[14] Williams Dep. at p. 167.
[15] Hines County Community College Transcript, attached as Exhibit 7.
[16] September 20, 2017 Magnolia Marine Pre-Employment Medical Information Form, attached as Exhibit 8.
[17] *Id.*
[18] Deposition of Tony King, attached as Exhibit 9, at pp. 29-30; Pouliot Dep. at p. 37.

Mr. Williams suffered at the age of 18 should have any bearing at all on his ability to collect maintenance and cure for an injury he suffered ten years later, through no fault of his own, while employed by MMT.

### LAW AND ARGUMENT

**I.   MAINTENANCE AND CURE**

A seaman is entitled to maintenance and cure when he becomes injured while in a ship's service and this right continues until he has reached maximum medical improvement. *Silmon v. Can Do II*, 89 F.3d 240 (5th Cir. 1996). The obligation to pay maintenance and cure is independent of tort law. *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008 (5th Cir. 1994). The right to maintenance and cure is broad and the burden of proof relatively light since recovery is not based on negligence or fault. *Freeman v. Thunder Bay Transportation Company, Inc.,* 735 F.Supp. 680 (M.D.La. 1990). Because the duty of maintenance and cure exists for the benefit of seaman, courts must be "liberal in interpreting this duty for the benefit and protection of seaman." *Vaughan v. Atkinson*, 369 U.S. 527 (1962).

Further, liability for maintenance and cure "is among the most pervasive of all" and "is not to be defeated by restrictive distinctions not narrowly confined." *Id.* The amount and duration of maintenance to which a seaman is entitled within the limit of the rules is, therefore, usually a question of fact. *Caulfield v. AC & D Marine,* 633 F.2d 1129 (5th Cir. 1981). Any ambiguities or doubts must be resolved in favor of the seaman. *Id.* Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." *McCorpen v. Cent. Gulf S.S. Corp.,* 396 F.2d 547, 548 (5th Cir. 1968).

Yet, there is a "general principle that it will be denied where he knowingly or fraudulently conceals his illness from the shipowner." *Id.; Bodden v. Professional Divers of New Orleans,*

*Inc.,* 2001 WL 1223589 (E.D.La.2001). However, for an employer to rely on this legal defense—known as the *McCorpen* defense—to deny the seaman's maintenance and cure claim, the employer must establish: (1) that the seaman-plaintiff has intentionally misrepresented or concealed medical facts; (2) the misrepresented or concealed facts were material to the employer's hiring decision; and (3) there exists a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage. *Id.; see also Brown v. Parker Offshore Drilling,* 410 F.3d 166, 171 (5th Cir. 2005).

"Because the employer bears the burden of proving each prong of [the *McCorpen*] affirmative defense at trial, the burden on the employer at the summary judgment stage is to demonstrate a lack of disputed issues of material fact with respect to each prong." *Luwisch v. American Marine Corp.*, 2018 WL 3111931, *1 (E.D. La. 6/25/18). There is a triable issue of fact when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries. *Id.*

## II. The *McCorpen* Defense Does Not Apply, As There Are Genuine Issues of Material Fact Regarding the Materiality Prong.

When "an employee can show that, even if undisclosed facts were material, he or she would have been hired regardless, the employer is not entitled to the *McCorpen* defense to evade its maintenance and cure obligation." *Smith v. Diamond Services Corp.*, 2015 WL 5559820 (E.D.La. 2015). Under such circumstances, "[a] triable issue of fact exists when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries." *Id.*

In support of this prong of a *McCorpen* defense, MMT makes two arguments. First is its blanket assertion that, simply because a form asks about any and all conditions from which an applicant has suffered or currently suffers, it is to be automatically deemed a "material" factor in

6

whether a person is hired by the company. There is no evidence presented by MMT that these pre-employment questionnaires have any effect on the decision to hire an employee, such as a company manual or any written policy or procedure stating this as a fact.

Its second argument is based on the unsworn declaration of its Senior Vice President. The Declaration claims that knowledge of the prior shoulder surgery from several years before his application date would have been "material" to the decision to hire Mr. Williams. This self-serving declaration states only that disclosure of "any injuries…would have been material" to the decision to hire Mr. Williams, without stating how it would have been material other than "inquir[ing] further" about prior medical records.[19] Had MMT even done so, they would have seen a complete recovery and release from care a few short months after surgery in 2009.[20] It is unclear how a prior shoulder injury followed by , a full release, passing an FCE, and no medical treatment whatsoever between 2009 and 2019 would have had any actual effect on MMT's decision to hire Mr. Williams on two separate occasions.

Whether a non-disclosed injury is material for the purposes of a *McCorpen* defense is an issue of fact, and where there are questions of whether the seaman would have been employed even had he made the requested disclosure, summary judgment is not appropriate. *Cal Dive Intern., Inc. v. Grant*, 2013 WL 1099157 (E.D. La. 2013). Like in *Cal Dive Intern*, there is a genuine issue of material fact as to whether Plaintiff's alleged non-disclosure was material for purposes of the *McCorpen* defense. The evidence, viewed in a light most favorable to Plaintiff, does not support materiality. A jury could reasonably find that even if Plaintiff intentionally concealed a prior injury, it was immaterial to his being hired by MMT, given its requirement that he completed a physical functional examination prior to hire, he had been released with "excellent strength" and

---

[19] R. Doc. 21-3.
[20] Ex. 4.

full range of motion two months after surgery in 2009, and the overarching fact that Mr. Williams was able to work for ten *years* without any shoulder pain or problems until he fell, through no fault of his own, on a vessel which suddenly shifted in dry dock in May 2019.

In *Luwisch v. American Marine Operators*, another division of the Court denied an employer's *McCorpen* motion for summary judgment because the employer submitted no evidence other than the declaration and deposition of the company's president to prove the plaintiff would not have been hired if the employer had known of the plaintiff's pre-existing degenerative disc disease. 2018 WL 3111931, at *3. The employer did not submit its official human resources documentation explaining hiring practices with regard to applicants with pre-existing conditions. The employer also did not present deposition testimony of any medical professional opining that they would not have cleared the plaintiff for work if they had known of his condition. *Id*. Without those, Judge Morgan found that there was insignificant proof to support the employer's claim that the non-disclosure was material to the decision to hire the plaintiff.

Plaintiff submits that *Luwisch* is very instructive here. As in *Luwisch*, MMT has failed to carry its summary judgment burden with respect to the materiality prong. Likewise, as in *Luwisch*, MMT has only submitted the declaration of Mr. Harris, who just made a blanket statement that MMT would have "inquired further" to determine Mr. Williams's employability had he reported "any prior injury." A jury can question what else MMT would have even done had it received Mr. Williams's prior medical records, given his release and passing an FCE in 2012 when he was initially hired. Further, there is a question as to whether anyone at MMT was even looking at the pre-employment physicals for information on prior injuries. While the document threatens termination if the information is inaccurate, Mr. Williams did not write down his knee surgery which he had while employed by MMT, and which the company obviously knew about, yet no

action was taken against Mr. Williams for this oversight. He continued to work for MMT for several years without incident until he fell on the M/V JODY MCMINN.

Defendant has failed to provide anything from its human resources manuals or policies insofar as its hiring practices with regard to applicants with pre-existing conditions. Further, as in *Luwisch*, MMT has not proffered any medical professional opinion that Mr. Williams would not have been cleared for work at MMT if they had known of the prior shoulder injury, which it likely cannot do, given the years that passed between his initial complaints and hire, and his hire and ultimate injury. When it is "unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries," triable issues of fact exist. *Hare v. Graham Gulf,* 22 F. Supp. 3d 648, 654 (E.D. La. 2014). That is the case here and, accordingly, Plaintiff submits that summary judgment should be denied to MMT on its *McCorpen* defense.

### III.   The *McCorpen* Defense Also Should Not Apply Due to Genuine Issues of Material Fact on the Concealment Prong.

While Plaintiff did not report his prior surgery in his pre-employment questionnaires, there is a significant question as to whether he fully understood the questions being asked. Mr. Williams had not suffered from any problems with or pain in his shoulder before either of his applications for employment with MMT. He did not understand that the question was asking whether he had *ever* had any problems, but rather interpreted it as asking only if he was currently having problems. Mr. Williams suffers from a learning disability which specifically affects his reading comprehension. Now, despite these difficulties, which are seen on his high school records, MMT wants to eliminate Mr. Williams's maintenance and cure claims for failing to understand a form which no one explained to him at the medical facility where the physicals were performed. Further, there is no evidence that Plaintiff had any limited mobility, activity restrictions, or difficulty performing his job duties, which fall into a heavy duty category, before his work accident. He had

9

been released from care ten years before he suffered his shoulder injury while working for MMT. As such, he had "reasonable grounds for his good faith belief that he was fit for duty." *McCorpen,* 396 F.2d at 549.

Rather than the overbroad protection MMT seeks here, the Fifth Circuit never meant to restrict maintenance and cure so significantly. Instead, the goal was to prevent those seamen who were obviously defrauding the employer about a prior injury from receiving maintenance and cure for an injury that clearly was not caused by an accident aboard the vessel. In fact, the Fifth Circuit in *Brown* stated:

> Employers need to be certain that each employee is physically able to do the work, not only to protect the employer from liability, but also to protect the employees. This is the purpose of the preemployment health questionnaire, and of the *McCorpen* defense. Seamen must not be allowed to blatantly misrepresent their medical history on questionnaires and then plead ignorance before a jury.

*Brown v. Parker Offshore Drilling,* 410 F.3d 166, 171 (5th Cir. 2005). The *McCorpen* defense should not be wielded like a sword, but rather as a shield to prevent a manifest injustice.

In *McCorpen,* the plaintiff was "well aware of the serious, ongoing and long term nature of his diabetic condition." Here, Mr. Williams underwent surgery on his left shoulder in 2009, from which he completely recovered a few months later. He had absolutely no problems or pain in his left shoulder until ten years later when he fell on the M/V JODY MCMINN in an accident which was not his fault or doing. He had no difficulty performing the heavy work which was required of him for all of those years he worked with MMT, and no problem passing a physical or FCE to show that he was physically able to do the job. Whether the shoulder condition Mr. Williams experienced at age 18, and which completely resolved shortly after surgery, is something that Plaintiff should have disclosed is a determination for the jury, especially given his testimony on his inability to fully understand the questions being asked in the questionnaire.

In this case, whether Plaintiff misrepresented his medical history is a credibility issue that should be left to the determination of the jury. Indeed, he was forthcoming with his treating orthopedic surgeon who he saw after the May 2019 incident, immediately reporting to him that he previously had shoulder surgery. This was not hidden from his doctors when he needed medical treatment, and was not "hidden" from MMT, so much as he simply did not understand the questions being asked. This is not a case that calls for a strict application of the *McCorpen* defense to strip Mr. Williams of his right to maintenance and cure. The evidence in this case, viewed in a light most favorable to Plaintiff, does not support that Plaintiff intentionally concealed his shoulder injury, for which he had received no medical treatment for over ten years before he fell on the M/V JODY MCMINN in May 2019. A jury could reasonably find that Plaintiff had no such intent to conceal or misrepresent his prior pain.

## **CONCLUSION**

Plaintiff respectfully submits that Magnolia Marine Transport Company has not established that there are no genuine issues of material fact on the *McCorpen* factors that would entitle it to partial summary judgment on maintenance and cure. Specifically, the materiality component of any such defense has not been met by the summary and self-serving statements in the Unsworn Declaration of MMT's Senior Vice President, statements which are not supported by any other evidence in the record. Further, there are genuine issues of fact on whether Mr. Williams intentionally concealed the prior injury to his shoulder. For these reasons, and all others set forth herein, Plaintiff respectfully requests that Defendant's Motion for Partial Summary Judgment be denied.

Respectfully Submitted,

*/s/ Megan C. Misko* _____
TIMOTHY J. YOUNG (22677)
TAMMY D. HARRIS (29896)
MEGAN C. MISKO (29803)
JOSEPH B. MARINO, III (29966)
**THE YOUNG FIRM**
400 Poydras Street, Suite 2090
New Orleans, LA 70130
Telephone: (504) 680-4100
Facsimile: (504) 680-4101